Brinkerhoff, J.
The proofs in the original case, taken in connection with the pleadings, disclose substantially the following state of facts:
In December, 1823, the complainants were the owners and holders of a- note of hand, given to them by one Andrew Megrue, which, they delivered and indorsed to the defendant Morris, for collection, taking from him a receipt, as follows : ’
“ Cincinnati, December 31, 1823.
“Received of James Reynolds & Co., a note of hand, drawn by *282 Andrew *Megrue, Sen., in their favor, for three hundred and fifty-one dollars and seven cents, thirty days after date, with interest, dated the 10th of May, 1823, the amount of which I promise to collect for them, or return the note.”
At the August term, 1826, of Clermont county common pleas, Andrew Megrue being then dead, judgment was recovered by Morris, in his own name, on the note, for the sum of $419.64, against Jonathan Megrue, his administrator. The judgment having become dormant, it was afterward revived by scire facias, and in 1837 execution was issued and levied on twenty-two acres of land, in the original bill described, and of which Andrew Megrue died seized.
About this time a compromise was entered into between Morris and Jonathan Megrue, the administrator, by which it was verbally agreed that Morris should bid off the twenty-two acres levied on, take the sheriff’s deed for the same, and then convey one-half of the land to Jonathan Megrue, and retain the other half in full satisfaction of the judgment.
The twenty-two acre tract was accordingly sold by the sheriff, and bid off by Morris, in October, 1837, and in January, 1838, the sheriff executed to him a deed of conveyance therefor. Under this conveyance Morris took possession of the premises, and had the same transferred in the books of the auditor of the county, for taxation in his name. But Morris being advised that he had acquired no title by reason of his purchase and deed from -the sheriff, and Jonathan Megrue, who was one of the heirs of Andrew Megrue, deceased, having in the meantime procured deeds of release to himself from his co-heirs, it was then agreed between them, in modification of their former abortive arrangement, that Morris, instead of conveying to Jonathan the half of the land, should satisfy a note of hand outstanding against the estate of Andrew Megrue, deceased, for about $234, in favor of one Brown, and on which Jonathan was liable as surety; and in consideration of the satisfaction by Morris of this claim of Brown, and of the discharge in full of the judgment, Jonathan Megrue was to convey his title to the entire tract to Morris. All this was done, the conveyance from Jonathan Megrue to Morris bearing date March 19, 1839.
*Morris, not being an attorney at law, had employed and paid counsel for obtaining and reviving the judgment, and had paid costs aud other expenses which, together with a fair allowance for-his own trouble, would probably amount to something over one *283 hundred, dollars. The value of the entire tract when he obtained his title from Jonathan Magrue, was not far from five hundred dollars.
The original bill was filed in January, 1850, and during the period of about eleven years which intervened, and since that time, Morris has had the rents, issues, and profits of the premises, which are in all estimated by a master, to whom a reference was made, as amounting, in March, 1853, to over eight hundred dollars.
The complainants claim to hold Morris as a trustee of the entire tract for their use, and pray that he be compelled to release to them the legal title, and to account.
The defendant denies the trust, claims to have purchased and to be entitled to hold the entire premises for his own use and benefit, and insists on the complainants’ laches and the statute of limitations.
The question before us is, did the court below err in dismissing the complainants’ bill ?
Whether the case made in the proofs is such as to have warranted and demanded a decree for the complainants, is a question which, in the view we take of the case, is not necessary to be determined; for, before we reach that question, and preliminary to it, we must inquire whether there is not a fatal variance between the case as alleged and the case as proved.
The specific allegations of the original bill are, that “the said Morris agreed to take from the said Jonathan Megruo, administrator, a certain piece of land in satisfaction of said judgment, which land is described as follows,” etc., and “which land was afterward, for the consideration aforesaid (satisfaction of said judgment), conveyed by said Jonathan Megrue and wife to the said Morris, by deed,” etc.
Now, the allegation here is, substantially, that the whole land was conveyed to Morris for the sole consideration of the satisfaction *of the judgment; while the real transaction disclosed by the proof is, that but the undivided half of the whole land was conveyed in satisfaction of the judgment, or, in other words, that the whole land was conveyed in consideration of the satisfaction of tho judgment and of the payment, by Morris, out of his own pocket, of the note outstanding in favor of Brown. .
That the allegata and probata must substantially agree in proceedings in equity, as well as at law, is a doctrine too familiar and well settled to require the support of authority. “Proof without *284 allegation, is as ineffectual as allegation without proof.” Hunt v. Daniel, 6 J. J. Marsh. 404. There is no dispute or uncertainty as to the rule. The only difficulty, if there be any, is in respect to its application in the case before us. In Dille v. Woods, 14 Ohio, 126, it is said: “ The bill alleges an agreement to convey to each of the children. The proof sustains a decree to convey to two only. By the allegata of the bill all, all the complainants had a joint right to pursue an interest in the land, and to have a joint decree for the title. By the proof, the girls were to have a claim for something against John and William, who alone were to have the title. The point was not particularly brought to our attention on the original hearing, and the question escaped a critical examination. It is, nevertheless, fatal to the decree. The proofs and allegations, in chancery as well as at law, must correspond.”
In Libbey v. Hodgdon, 9 N. H. 394, it is said: “ The plaintiff has set up a contract for an absolute conveyance of certain lands; this is part of an entire contract; in evidence it appears to have been subject to certain exceptions and reservations. We think the variance is substantial.”
It is true that these were cases brought distinctly upon, and for the specific performance of contracts, and are therefore distinguishable from the case before us, which is not brought upon the contract in respect to which the variance occurs, but is brought to enforce a resulting trust arising out of a contract in reference to lands, made between the defendant and a third person. But the case of Clements v. Kellogg, 1 Ala. 330, bears a very close analogy to the case at bar, and seems to be ^conclusive to the effect, that where a resulting trust is claimed by reason of a contract or title material to be alleged, a variance between the contract or title alleged and proved is fatal. That was a bill in chancery brought by a minor daughter of Theron Kellogg, deceased, by her next friend, against the administrator of Joshua Clements, seeking to compel him to account for the profits arising from the occupancy by Clements, in his lifetime, of “ six thousand four hundred arpents of land and a saw-mill,” of which Clements and the complainant’s father were in his lifetime tenants in common. The proof was that Clements occupied “six hundred and foi-ty acres of land and a sawmill,” of which the complainant’s father was the sole proprietor. The variance was held to be fatal. Like the case before us, the object of the bill was the enforcement of a trust, and the title of tha *285 defendant was alleged in the bill there, as in the case at bar, only as a statement of the facts and circumstances out of which it was: claimed that a resulting trust arose.
In the case before us it was material for the complainants to-show the contract between Morris and Jonathan Megrue; and it was especially material for them to show how much of, or what interest in the land conveyed, was paid for by their judgment; for, without such showing, they would not, on the face of their bill, entitle themselves to a decree. These allegations then, being necessary and material, it seems to us clear that the proofs must, on principle, conform to them.
We think, therefore, the variance between- the allegations and proofs were fatal to the complainants in the original case. They might have taken leave to amend their bill before the entering of the decree below; but having failed to do so, they are now too late, and the bill of review must be dismissed.
Bartley, C. J., and Swan, Scott, and Sutliee, JJ., concurred.